* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On the date of incident giving rise to this claim, an employer-employee relationship existed between the parties and the carrier was on the risk.
2. The medical records of the treating physicians are admissible.
3. The case has been accepted as compensable in South Carolina and should plaintiff prevail here, defendants will be entitled to credits under N.C. Gen. Stat. § 97-42.
4. The issues for determination are:
 a. Whether North Carolina Industrial Commission has jurisdiction over this claim pursuant to N.C. Gen. Stat. § 97-36?
 b. If so, whether plaintiff was injured in the course and scope of her employment with defendant-employer on 17 February 2004?
 c. What is plaintiff's average weekly wage?
 d. Are defendants entitled to a credit for the benefits paid under South Carolina per N.C. Gen. Stat. § 97-42?
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records
 b. Stipulated Exhibit #2: I.C. Forms]
 c. Stipulated Exhibit #3: S.C. Industrial Commission Forms
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: Time cards
 b. Plaintiff's Exhibit #2: Pay stubs
 c. Defendants' Exhibit #1: Interrogatory responses
 d. Defendants' Exhibit #2: S.C. benefits received by plaintiff
3. Subsequent to the hearing and pursuant to the Order of the Deputy Commissioner, defendants submitted a Form 22 Wage Chart and payroll records which are hereby admitted into the record as Defendants' Exhibit #3.
 * * * * * * * * * * *
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the hearing date, plaintiff was 39 years old. She has a GED and a commercial driver's license. Plaintiff has worked as truck driver since approximately 1990 driving tractor-trailer rigs.
2. On 17 February 2004, plaintiff was employed by defendant-employer, Frank Sharpe, d/b/a Blackhawk Enterprises, as a truck driver. Frank Sharpe owns and operates Blackhawk. Plaintiff first started working for defendant-employer on or about August 1998. Mr. Sharpe hired her at the Charlotte Fed-Ex terminal after an interview and driving test. Plaintiff's paperwork was required to be processed by Fed-Ex and she had to be approved by Fed-Ex as an employee of defendant-employer. Once defendant-employer hired her, plaintiff reported to work at the Fed-Ex terminal in Charlotte. From this point forward, Fed-Ex supervised plaintiff's work activities and Mr. Sharpe exercised virtually no supervision over her. At the time of hire, plaintiff was living in North Carolina and Frank Sharpe lived in Clover, South Carolina.
3. Defendant-employer has a contract with Fed-Ex Corporation to move their freight by whatever means he has available. He has the rights to at least 6 routes from Fed-Ex and owns six tractors that are located at a place of his choosing. Defendant-employer has placed them for convenience at the Charlotte Fed-Ex terminal because his drivers pick up their first loads at this location. Defendant-employer employs eight to ten employees at any given time and he determines which employee is assigned to a particular route. He paid his employees based on information his drivers provided on time cards. Defendant-employer did not receive any information from Fed-Ex to assemble an employee's pay. His principal office is located in his home in Clover, South Carolina but all of his operations are out of the Charlotte Fed-Ex terminal.
4. Plaintiff had a set run everyday during her employment with defendant-employer. Plaintiff began her workday by going to the Federal Express terminal in Charlotte. When she arrived she would sign in at the security gate, then walk across the parking lot to prepare her tractor, go into the Federal Express terminal to learn which trailers she would be pulling that day, then go back in the yard and hook up the trailers. On occasion, plaintiff was required to return to the dispatcher inside the terminal for paperwork and when everything was in order, she was allowed to leave the terminal and proceed on her run.
5. Plaintiff drove various routes, including Beckley, West Virginia, Dandridge, Tennessee, and Richmond Hill, Georgia. Truck drivers for defendant-employer were paid by the mile rather than by the hour and thus the different routes determined the amount of income received. These routes indicated that plaintiff went from the Charlotte Fed-Ex terminal to the final location and back every single day. The longest, and therefore the most profitable, routes were divided among drivers according to seniority.
6. The Richmond Hill, Georgia route was given to plaintiff after many years of service to defendant-employer and after the more senior drivers had left defendant-employer's employ. This route generated more income for plaintiff and was the route she had been doing at the time of her accident. Plaintiff's daily pay on the Richmond Hill run was $178.20. She made this run an average of five times per week prior to her injury, except for missing runs during the Thanksgiving, Christmas and New Year's holidays and missing runs at the end of January and beginning of February 2004, apparently due to inclement weather.
7. Plaintiff was injured on 17 February 2004, when she arrived at the Fed-Ex Charlotte terminal. She drove her personal vehicle from her home in North Carolina to the Fed-Ex Charlotte terminal that morning. Plaintiff parked her car in the parking lot adjacent to the terminal and walked to the guard shack to sign in. Once she signed in, she entered the internal portion of the Fed-Ex lot and began walking directly to her truck. As she was walking through the parking lot on the walkway to the truck parking area, she stepped on a patch of ice and fell. Fed-Ex owns and operates the terminal where plaintiff was injured and they own and operate the lots where the trucks are parked as well. Plaintiff's accident occurred prior to starting the hooking up/pre-trip process. She reported the incident to a Fed-Ex employee and then she called defendant-employer to report it as well.
8. Plaintiff was treated at Carolina Orthopaedic by Dr. William H. Jarman who diagnosed her with coccydynia secondary to fracture of her coccyx and a lumbosacral strain. Plaintiff was treated conservatively with physical therapy, two epidural injections at the Pain Center, and pain and muscle relaxation medication.
9. As of 1 November 2004, Dr. Jarman opined that plaintiff had reached the maximum benefit of the treatment he was able to provide, and he assigned a permanent impairment of 5% to the whole person secondary to the coccyx fracture with residual pain. Dr. Jarman released plaintiff at maximum medical improvement on 7 December 2004, and issued permanent work restrictions on that date that she could lift up to 10 lbs., push/pull up to 20 pounds, engage in overhead work up to 10 pounds, sit for one hour at a time, and stand/walk for up to 2 hours at a time.
10. Dr. Stanley Dover has been providing pain management treatment for plaintiff. He determined that 90% of plaintiff's complaints were derived from her low back but he was unable to distinguish the etiology of her pain. Because the lumbar region is located only six to eight inches above the coccyx, Dr. Dover opined that the fall as the mechanism of injury could have contributed to her lumbar pain. During his treatment, he did not address work restrictions but he did not disagree with the 7 December 2004 restrictions issued by Dr. Jarman. Dr. Dover opined that working as a truck driver again would be a difficult endeavor for plaintiff but he did not foreclose the possibility of future employment.
11. Dr. Dover further opined that given the length of time since the initial injury, "the chance of [plaintiff] returning to full-time work is very low and the chance of full recovery, a long-lasting recovery with no further treatment at all I would say would be low as well." Dr. Dover also noted that plaintiff has not reached maximum medical improvement and he opined that she would continue to require treatment for more than the next two years.
12. Plaintiff's principal place of employment was the Federal Express terminal in Charlotte, North Carolina and the contract of employment between plaintiff and defendant-employer was entered into in the State of North Carolina.
13. Although defendants submitted a Form 22 wage statement into evidence, testimony from defendant-employer indicated that it probably showed net income rather than gross income. Therefore, the Full Commission finds that the Form 22 submitted is not the most accurate or fair evidence of plaintiff's pre-injury earnings. Defendants did not submit any evidence of the earnings of similar employees.
14. Subsequent to the hearing and without objection, defendants submitted an earnings printout that showed plaintiff's gross bi-weekly earnings for the period of 1 January 2003 through 27 February 2004. Based on this document, the Full Commission finds that plaintiff earned $809.48 per week on the Richmond Hill run, except for the weeks associated with the Thanksgiving, Christmas and New Year's holidays, and the period at the end of January and beginning of February 2004 when approximately four daily runs were missed.
15. Except for these holiday and weather periods, plaintiff worked steadily five days per week on the Richmond Hill run for several months prior to the accident. But for the accident of 17 February 2004, plaintiff would still be employed on this run, as she was still considered an employee of defendant-employer as of the date of the hearing and had the requisite seniority to ensure her assignment to this route.
16. For the above reasons, the Full Commission finds as fact that a calculation of plaintiff's average weekly wage based upon the income she was making on the Richmond Hill run at the time of her injury provides a result that is fair and just to both parties. Therefore, plaintiff's average weekly wage is calculated to be $809.48 as this is the amount she would be earning but for the accident. The Full Commission reached this amount by averaging the total gross earnings of $19,081.26 from the Richmond Hill run for the 165 calendar day period from 5 September 2003 to 17 February 2004 inclusive, thereby giving defendant-employer credit for the days missed due to holidays and inclement weather. This results in a compensation rate of $539.68 per week.
17. Due to her fractured coccyx and the resulting severe and chronic low back pain that is exacerbated by most activities, plaintiff has been unable to work in her usual occupation as a truck driver since the date of the accident and continuing. For these same reasons, she has been and continues to be disabled from any other occupation for which she may be qualified. Defendants have not brought forth any evidence that plaintiff is currently able to work in any competitive employment.
18. Plaintiff's workers compensation injury was accepted under South Carolina Workers' Compensation Law and she has continued to receive benefits under South Carolina law since the time of her injury. She has been receiving weekly benefits at a weekly rate of $576.95 per South Carolina Industrial Commission Form 15.
19. Counsel for plaintiff has submitted a fee contract signed by plaintiff, which allows for a 25% contingent fee from the proceeds awarded by the North Carolina Industrial Commission in this proceeding. However, counsel has advised the Commission by letter that he intends to waive most of the fee that could be awarded because he recognizes that achieving North Carolina jurisdiction on the case has not significantly improved plaintiff's benefits or position in the short term, and he has authorized the Commission to enter a fee award of an amount less than the contractual obligation.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Because the contract of employment was entered into in the State of North Carolina, the Industrial Commission has jurisdiction over this claim. N.C. Gen. Stat. § 97-36.
2. Plaintiff suffered an injury by accident in the course and scope of her employment with defendant-employer on 17 February 2004, when she fell and broke her coccyx on the premises where defendant-employer garaged her assigned tractor. N.C. Gen. Stat. § 97-2(6).
3. Prior to the date of injury but within 52 weeks of the date of injury, plaintiff had reached a position of seniority sufficient to obtain for her the most munificent of defendant-employer's routes. The evidence shows that as long as she continued to work for defendant-employer, she would retain this route and thus continue to earn the greater wages associated with it. Therefore, it is unfair to plaintiff to establish her average weekly wage by encompassing the lesser wages earned by driving other routes during the 52 weeks prior to the date of injury. For this reason, plaintiff's average weekly wage is determined pursuant to the fifth method set forth in N.C. Gen. Stat. § 97-2(5), thereby providing a method of calculation which is most fair to both parties and gives the result that most reflects what plaintiff would be earning but for the accident. N.C. Gen. Stat. § 97-2(5).
4. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $539.68 per week for the period beginning on 18 February 2004 and continuing. N.C. Gen. Stat. § 97-29.
5. Defendants are entitled to a credit for those amounts plaintiff has received in indemnity benefits from the State of South Carolina for the injuries sustained on 17 February 2004. N.C. Gen. Stat. § 97-42.
6. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1, including the continuing treatment of Dr. Dover. N.C. Gen. Stat. § 97-2(19).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to the Plaintiff temporary total disability benefits beginning February 18, 2004 in an amount of $539.68 per week, subject to a credit for the amounts previously paid under the South Carolina Workers' Compensation claim on a week by week basis.
2. Pursuant to the request of plaintiff's counsel, it is hereby Ordered that a reasonable attorney's fee of $750.00 is hereby approved to be deducted from sums due plaintiff and paid directly to counsel at a rate of $25.00 per week until paid in full.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
5. Defendants shall pay the costs.
This 24th day of October 2006.
S/________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/________________________ THOMAS J. BOLCH COMMISSIONER
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER